*FILED*
*U.S. DISTRICT COURT*
*EASTERN DISTRICT OF LA*

*2002 MAR 25  AH 11: 29*

*LORETTA G. WHYTE*
*CLERK*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------------x
                                              :
INGENIX, INC.,                                :
                                              :
                         Plaintiff,           :
                                              :
VERSUS                                        :
                                              :
CLAUDE LAGALANTE,                             :
                                              :
                         Defendant.           :
-----------------------------------------------------------x
```

**CIVIL ACTION
NO. 2002** 02-0876

**SECTION**

**MAGISTRATE**

**JURY TRIAL** SECT. N MAG. 3
**DEMANDED**

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiff Ingenix, Inc. ("Plaintiff" or "Ingenix"), and for its complaint against defendant Claude Lagalante ("Defendant" or "Lagalante"), alleges as follows:

### THE PARTIES

1.      Plaintiff Ingenix is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Connecticut, and is in the business of, among other things, providing businesses with health care information and resources.

2.      Defendant Lagalante is a citizen of the State of Louisiana and resides in St. Tammany Parish, within the boundaries of this District.

1

Doc #323026v1

Fee $150.00
Process____
X Dktd
CtRmDep
Doc. No.

## JURISDICTION AND VENUE

3.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on Plaintiff's claim under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; diversity jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs; and supplementary jurisdiction pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## EVENTS GIVING RISE TO THIS ACTION

5.    Ingenix is a health information company that, among other commercial activities, provides businesses with health care information and resources to make critical decisions to improve the quality and efficiency of health care for their employees, lower their costs for providing health care, increase productivity of their workforce through better health, and in turn maximize returns on investments.  Ingenix hired Lagalante in December, 1998, as a Regional Sales Director based in Louisiana.  In this position Lagalante was responsible for generating employer prospects in the Southern Territory and selling new business to those prospects.  The Southern Territory assigned to Lagalante covered the states of Louisiana, Florida, Georgia, Alabama, Texas, North Carolina, South Carolina, Mississippi, Oklahoma, Tennessee and Kentucky.  As the Regional Sales Director for this Southern Territory, Lagalante visited employer prospects, was privy to Ingenix's marketing and pricing strategies, and was aware of the details of a number of Ingenix's significant customers and of Ingenix's pricing strategies with

2

respect to individual customers.  Lagalante resigned from Ingenix on February 15, 2002, to accept the Vice President of Sales position with Solucient, Inc., a direct competitor of Ingenix.

6.      Ingenix, as a UnitedHealth Group, Incorporated ("UHG") subsidiary, has procedures in place in an effort to protect its confidential, proprietary and trade secret information from theft.  In addition to password protection, which limits access to the company's computer databases to authorized employees only, UHG has several policies in place that act to protect this information.  One such policy is the Information Security Policy, which sets guidelines for the employees' use and handling of UHG's business information.  Every employee with access to sensitive business information is provided with a copy of this policy.  This policy provides, at page 3, that:

> [E]mployees must maintain the confidentiality of information they gain or have access to as a result of their employment.  Similarly, information conveying the Company's organization, strategies, business, information systems, technology, finances, personnel, operations and past, current or potential customers, providers and suppliers is confidential and may not be disclosed to other persons or entities except as necessary for the performance of job-related duties.

This policy continues on page 6 to provide that the information stored on the company's computer system "is proprietary and should never be used for personal gain."

7.      To maintain the confidentiality of the company's business information, the policy prohibits employees from e-mailing the company's business information to the employee's home.  The policy provides that in the event confidential information needs to be transferred via e-mail, the information technology security division ("IT Security") must first be consulted to determine possible alternative approaches and best practices.  Tools or techniques to route e-mails outside of the company domain are prohibited unless approved by IT Security.  Removable storage media, such as discs or CDs, containing sensitive information must be stored in a locked

3

Doc #323026v1

location when not in use.  Employees may not establish network connections except as expressly authorized.

8.      Similarly, UHG also addresses the confidentiality of its business information in its employee handbook.  There too the company educates its workforce on its obligation to maintain the confidentiality of the company's business information and establishes workplace procedures designed to protect the information.  Each employee joining UHG is required to sign a document specifically acknowledging his receipt of the employee handbook and his familiarity with his confidentiality obligations as a UHG employee.

9.      UHG also has an overriding Integrity and Compliance Policy that applies to all of its subsidiaries, including Ingenix.  The policy is designed to "[p]rotect all of the Company's Information Assets from misuse, theft, fraud, loss, disclosure or destruction."  The policy specifically prohibits the "use or disclos[ure]" of "Information Assets unless you know you are authorized to do so."  The policy prohibits the "use" of "Information Assets for your own personal gain or advantage."  The policy provides that "[e]ven when you no longer work at the Company, you have the same obligations to protect the Company's Information Assets.  You can't take it with you when you leave.  You can't use it after you leave."  The types of Information Assets covered by this policy include, among other things, "[b]usiness, financial, marketing and service plans associated with products, pricing strategies . . . customers lists and Internal databases."

10.     As referenced above, Lagalante signed a confidentiality agreement with UHG on two occasions when he acknowledged receipt of the employee handbooks. The first was on April 10, 1995.  That agreement provides in pertinent part as follows:

4

Doc #323026v1

I acknowledge that in carrying out my assigned responsibilities as an employee of UHG or its affiliated companies, I may be given access to sensitive and confidential information. I understand that it is my responsibility to protect the integrity and confidential nature of the information, both during and after my employment with UHG.

11.    The second acknowledgment of receiving the employee handbook was on

February 13, 1996. That Confidentiality Agreement provides:

I acknowledge that in carrying out my assigned responsibilities as an employee of UHG or its affiliated companies, I may be given access to sensitive and confidential information and to UHG's computer systems. I understand that it is my responsibility to protect the integrity and confidential nature of the Information, both during and after my employment with UHG.

12.    Lagalante had initially signed a Confidentiality and Non-Solicitation Agreement

with UHG on March 31, 1995, that provided in pertinent part as follows:

At any time during or subsequent to employment with Company, Employee will not directly or indirectly use or disclose Confidential Information to any other person or business entity without prior written approval by an officer of the Company. Employee will take all reasonable steps to prevent the negligent or inadvertent disclosure or use of the Company's Confidential Information

Upon termination of employment, Employee will return to the Company all documents and materials received from or created for the Company that contain Confidential Information.

13.    On October 31, 1997, Lagalante signed a Confidentiality Agreement with

Proamerica Managed Care, another UHG company. That Confidentiality Agreement provides as

follows:

Employee acknowledges that as a result of his employment by "PAMC", he will learn highly confidential information and trade secrets of 'PAMC," including business methods and techniques, the identity of "PAMC" clients, their employees, and their employees' dependents, including medical conditions, treatments and claims.

Employee further acknowledges that in accordance with "PAMC" policy, "PAMC" employees have access to such information in order to perform services for members and employees, with the legitimate expectation that it will

5

remain confidential. Employee agrees to keep such information strictly secret and to never disclose such information to persons outside his work area, or even to persons within his work area who have no need to know.

14.     As is set forth below, Lagalante has violated these policies in repeated ways, misappropriating the trade secrets of Ingenix stored in the laptop computer provided to him by Ingenix, and using them for his personal benefit and for the benefit of his new employer, which is a direct competitor of Ingenix. Such conduct supports all of the claims asserted herein and entitles Ingenix to the injunctive and monetary relief that it is seeking.

## COUNT I
### Computer Fraud and Abuse Act

15.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 14 and incorporates them herein by reference.

16.     The Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, permits any person who suffers damage or loss by reason of the criminal activity prohibited by this federal criminal statute to bring a civil action for damages and injunctive relief.

17.     From on or about January 10, 2002, through on or about February 21, 2002, Defendant Lagante, knowingly and with intent to defraud, accessed a protected computer, namely, a laptop computer owned by Ingenix and provided to him as an Ingenix employee. By means of such conduct, Defendant furthered his intended fraud and obtained things of value, including Ingenix business, customer, pricing and marketing information. The object of Lagalante's fraud, the thing obtained, and the value of such use exceeds $5,000, in violation of 18 U.S.C. § 1030(a)(4).

6

Doc #323026v1

18.    By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained.  Although the damages that Plaintiff has suffered to date shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante.  Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

COUNT II
Computer Fraud and Abuse Act

19.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 18 and incorporates them herein by reference.

20.    From on or about January 10, 2002, through on or about February 21, 2002, Defendant Lagante intentionally accessed a protected computer, namely, a laptop computer owned by Ingenix and provided to him as an Ingenix employee, without authorization, and as a result of such conduct caused damage in excess of $5,000, by deleting files from the computer in violation of 18 U.S.C. § 1030(a)(5)(C).

21.    By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained and deleted. Although the damages that Plaintiff has suffered to date shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante.  Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

7

Doc #323026v1

## COUNT III
### Breach of Contract

22.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 21 and incorporates them herein by reference.

23.     For good consideration, Defendant Lagalante is obligated under his Confidentiality Agreement with UHG with not to use or disclose any confidential and proprietary information that pertains to any aspect of the business of UHG or its affiliates, including Ingenix, until such information becomes generally known by the public.

24.     Plaintiff has fully performed its obligations under the Confidentiality Agreement, but Defendant Lagalante has breached the provisions of that contract.

25.     By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained. Although the damages that Plaintiff has suffered to date shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante. Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

## COUNT IV
### Misappropriation of Trade Secrets

26.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 25 and incorporates them herein by reference.

27.     Ingenix entrusted business, customer, pricing and marketing information to Defendant Lagalante solely for his use in its business and placed Lagalante on notice of the

8

Doc #323026v1

confidential and proprietary nature of this business and financial information during his employment.

28.    The business and financial information that were entrusted to Defendant Lagalante contained information that derived economic value from not being generally known by others or readily ascertainable by proper means, and Plaintiff has taken reasonable steps under the circumstances to maintain its secrecy.

29.    Defendant Lagalante, knowing that the information entrusted to him was the confidential and proprietary and trade secret information of Plaintiff, has misappropriated such information and intends to use and disclose such information for his own personal gain and to harm the Plaintiff.

30.    Such acts violate the Louisiana Trade Secrets Act, LA. REV. STAT. §§ 51:1431 *et seq.*, and the Louisiana Uniform Trade Practices and Consumer Protection Law, LA. REV. STAT.. §§ 51:1401 *et seq.*

31.    By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained. Although the damages that Plaintiff has suffered to date and the attorney's fees to which Plaintiff is entitled shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante. Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

Doc #323026v1

## COUNT V
### Breach of Fiduciary Duty

32.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 31 and incorporates them herein by reference.

33.     As the Sales Director of the Southern Region for Ingenix, Defendant Lagalante owed Plaintiff a fiduciary duty of the utmost good faith and loyalty, including a duty of candor, competence, loyalty, and a duty not to exploit, in competition with Plaintiff, confidential and proprietary and trade secret information pertaining to the conduct of Plaintiff's business and a duty not to reveal such information to unauthorized persons.

34.     By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained. Although the damages that Plaintiff has suffered to date shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante. Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

## COUNT V
### Conversion

35.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 34 and incorporates them herein by reference.

36.     By reason of the foregoing, Defendant Lagalante has intentionally misappropriated and taken dominion and control of the property of Plaintiff, to wit, Plaintiff's confidential and proprietary business, customer, pricing and marketing information.

Doc #323026v1

37.     Such taking and continued dominion and control of Plaintiff's property was and is wrongful, intentional, and malicious.

38.     By reason of the acts alleged herein, Ingenix has been and will continue to be injured through Lagalante's unlawful use of the information improperly obtained.  Although the damages that Plaintiff has suffered to date shall be established at trial, its remedy at law is inadequate to prevent ongoing and future violations by Lagalante.  Accordingly, Ingenix seeks injunctive relief to protect its confidential, proprietary, business and financial information, its goodwill, and other legitimate business interests.

<u>Jury Demand</u>

39.     Plaintiff hereby demands trial by jury of all issues to which it may be entitled.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff prays for the following relief:

(i)     an order enjoining Defendant Lagalante from using or disclosing any and all of Plaintiff's business, customer, pricing and marketing information that was stolen from Plaintiff's computer;

(ii)    an order directing Defendant Lagalante to return to Plaintiff all of its property, documents, and business records (including all copies thereof and computer records), in his possession, custody or control;

(iii)   an order enjoining Defendant Lagalante from soliciting or accepting business from any customers or prospects of Plaintiff as to which Lagalante obtained computer information through the Ingenix laptop computer provided to him to perform his job responsibilities for Ingenix;

11

Doc #323026v1

(iv)    an award of monetary damages against Defendant Lagalante in an amount to be determined at trial as a result of Defendant Lagalante's wrongful conduct;

(v)    an award to Plaintiff of its attorney's fees, costs and expenses in connection with this action; and

(vi)    such other and further relief as the Court deems just.

Respectfully submitted, this 25th day of March, 2002.

CRAIG L. CAESAR, T.A. (19235)
EDWARD L. FENASCI (24793)
McGLINCHEY STAFFORD, PLLC
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR INGENIX, INC.**

12